IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAN GOODRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. CV-09-00017-S-BLW |
| | ) | |
| v. | ) | |
| | ) | |
| PAM SONNEN, KEVIN KEMPF, | ) | |
| KIM JONES, JOHANNA SMITH, | ) | |
| J. HARDISON, J. HENRY, | ) | **MEMORANDUM DECISION** |
| MICHAEL JOHNSON, KIM | ) | **AND ORDER** |
| SPAULDING, AMY ANDERSON, | ) | |
| J.C. TYON, C/O REYES, | ) | |
| Z. McKNIGHT, LT. GERBER, | ) | |
| TEREMA CARLIN, TODD | ) | |
| MARTIN, TOM McKENZIE, | ) | |
| and C/O CRAWFORD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Several motions are currently pending in this prisoner civil rights matter.

The parties have adequately stated the facts and legal argument in their briefing,

and the Court shall resolve these matters on the written record without oral

argument.  D. Idaho. L. Civil. R. 7.1.

For the reasons that follow, the Court concludes that the claims against the

remaining Defendants are untimely, and Defendants' Motion for Judgment on the

**MEMORANDUM DECISION AND ORDER - 1**

Pleadings will be granted on that basis.[1]

## BACKGROUND

Plaintiff alleges that prison officials and employees at the Idaho Correctional Institution at Orofino (ICI-O) conspired in late 2005 and early 2006 to "file a bogus and false disciplinary (DOR) charge" against him in order to impede his ability to litigate claims against the Idaho Department of Correction (IDOC). (Amended Complaint, p. 2.) In particular, Plaintiff asserts that Defendant Anderson, a sergeant, "coerced, bullied, and used other inmates" to allege falsely that Plaintiff had engaged in sexual misconduct, and that prison officials Terema Carlin, Kevin Kempf, Todd Martin, and Tom McKenzie, interfered with the subsequent investigation so that Plaintiff would be found guilty and transferred from ICI-O. (*Id*. at ¶¶ 33, 36, 38, 42.)

On January 4, 2006, Defendant Crawford allegedly conducted an unfair disciplinary hearing on the charge and falsified documents to support the guilty finding. (*Id*. at ¶ 56.) According to Plaintiff, ICI-O officials used the DOR to have him taken immediately before a Restrictive Housing hearing, where Plaintiff was reclassified and transferred to the Idaho Maximum Security Institution (IMSI). (*Id*.

---

[1] Plaintiff's Motion for Summary Judgment will be denied as moot. In that Motion, Plaintiff argues he is entitled to judgment because Defendants did not respond in a timely fashion to his Amended Complaint. This matter was resolved when the Court denied Plaintiff's Motion for Default Judgment. (Docket No. 30.)

**MEMORANDUM DECISION AND ORDER - 2**

at ¶¶ 59-62.)   Within ten days of the transfer, an appellate authority at ICI-O

dismissed the DOR, but Plaintiff contends that he did not learn of the dismissal for

almost another three years.  (*Id*. at ¶ 78.)  Instead, he alleges that other IDOC

officials continued to rely on the DOR as if it were still active, and, in conjunction

with a sexual predatory behavior alert that had been placed in his file, these

officials kept him in a more restrictive housing environment.

In December 2008, after Plaintiff received confirmation that the DOR had

been dismissed in 2006, he notified classification officer Kim Spaulding, who

thanked him for "bringing this to [her] attention" and informed him that the "DOR

has been removed from [his] central file." (Exhibit K.)  Spaulding then recalculated

Plaintiff's custody level, which changed from close custody to medium custody.

(Exhibit K.)  Warden Jeff Henry responded to Plaintiff's subsequent grievance by

informing him that the "[t]he error had been corrected" and he "will be reviewed

for future appropriate housing based on the [new] classification and the safety of

the facility and [him]."  (Exhibit L.)  In April 2009, Plaintiff was returned to ICI-O.

(*Id*. at ¶¶ 160-65.)

In his Amended Complaint, Plaintiff has listed seventeen potential

defendants.  The Court conducted an initial review of the Amended Complaint and

concluded that Plaintiff had stated claims for relief under the First and Fourteenth

Amendments against ICI-O Defendants Amy Anderson, Terema Carlin, Kevin
Kempf, Todd Martin, Tom McKenzie, and C/O Crawford.  (Docket No. 10, pp. 5-
7.)  On the other hand, the Court dismissed all other named IDOC Defendants
whom Plaintiff alleged were involved in a broad conspiracy to cover up the
dismissal of the DOR, house him in administrative segregation, and force him to
settle his lawsuits.  (Docket No. 10, p. 7.)  These included Pam Sonnen, Johanna
Smith, J. Hardison, J. Henry, Michael Johnson, Kim Spaulding, J.C. Tyon, C/O
Reyes, Z. McKnight, Lt. Gerber and Kim Jones.  (*Id*.)

The remaining Defendants filed an Answer and a Motion for Judgment on
the Pleadings, arguing that the claims against them are untimely because the statute
of limitations has expired.  (Docket No. 19, pp. 7-11.)  Other motions are also
pending.

## PRELIMINARY DISCOVERY MOTIONS

The parties have filed discovery-related motions, including Plaintiff's
Motion to Compel and Defendants' Motion for Protective Order.  It appears that
Defendants did not respond to Plaintiff's initial discovery requests, and Defendants
seek an order protecting them from discovery until the Motion for Judgment on the
Pleadings is resolved.  Plaintiff counters that discovery should have proceeded as a
matter of course, and that Defendants did not lodge an objection in a timely

**MEMORANDUM DECISION AND ORDER - 4**

manner.

While the Court disapproves of Defendants' apparent tardiness in seeking a protective order, the Court agrees with Defendants that unless an exchange of discovery would be relevant to the pending procedural issue, it would be premature, burdensome, and wasteful of resources.  After reviewing Plaintiff's arguments, the Court finds that he has not offered a persuasive reason for discovery to go forward at this time.  His requests are exceptionally broad and seek the disclosure of documents and answers to interrogatories that are designed to develop evidence on  the merits of his claims rather than to rebut Defendants' statute of limitations defense.  Though Plaintiff does argue that the discovery could reveal an "ongoing tort" by Defendants, thus providing a later starting date for the statute of limitations, reliance on the continuing tort doctrine is misplaced in this proceeding, for the reasons the Court gives below.

Therefore, Defendants' Motion for a Protective Order will be granted, and Plaintiff's Motion to Compel and Motions to Strike will be denied.

## MOTION FOR JUDGMENT ON THE PLEADINGS

A.    <u>Judgment on the Pleadings</u>

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings "after the pleadings are closed."  Judgment is

appropriate when the moving party establishes on the face of the pleadings that no

material issue of fact remains to be resolved and that it is entitled to judgment as a

matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d

1542, 1550 (9th Cir. 1990). In ruling on such a motion, the court must accept the

allegations of the non-moving party as true. *Id.*

If the court looks to evidence beyond the pleadings, the motion must be

converted into one for summary judgment. Fed. R. Civil P. 12(d). But the court

may consider attachments to the complaint and documents referred to in the

complaint though not attached to it, where authenticity is not in question. *Hal*

*Roach Studios*, 896 F.2d at 1555 n.19; *Townsend v. Columbia Operations*, 667

F.2d 844, 848-49 (9th Cir. 1982).

B.      Statute of Limitations

In a civil rights case brought under § 1983, the statue of limitations is

determined by the law of the state in which the action arose. *Wallace v. Kato,* 549

U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-250 (1989);

*Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). Section 1983 claims are subject

to the state statute of limitations for personal injury actions because such claims

have been found analogous to actions for injuries to personal rights. *Wilson*, 471

U.S. at 277 (later overruled only as to claims brought under the Securities

**MEMORANDUM DECISION AND ORDER - 6**

Exchange Act of 1934, not applicable here).  In Idaho, the limitations period for claims alleging personal injury is two years.  Idaho Code § 5-219(4).[2]

While state law determines the relevant statute of limitations to be applied to civil rights actions, federal law determines when a claim accrues, or, in other words, when the statute of limitations begins running.  *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 926 (9th Cir. 2004).  A civil rights claim accrues when the plaintiff knows or should know of the injury that forms the basis of the cause of action.  *Id.* (citing *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)).  Under the discovery rule, a plaintiff "must be diligent in discovering the critical facts," or his claim will be barred if he "should have known in the exercise of due diligence." *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir. 1999).  Furthermore, a claim accrues "even though the full extent of the injury is not then known or predictable" because otherwise "the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief."  *Wallace*, 549 U.S. at 391.

A claimant may file a lawsuit beyond the statute of limitations deadline if he

---

[2]  Plaintiff's argument that the three-year statute of limitations for fraud, Idaho Code § 5-218(4), governs his federal claim is unavailing.  *See Wilson*, 471 U.S. at 277-78 (rejecting the argument that the statute of limitations for each claim asserted in a civil rights complaint should vary according to the type of constitutional or federal right violated).

**MEMORANDUM DECISION AND ORDER - 7**

can show that his statute of limitations should have been tolled (or stopped) for a certain period of time during the deadline period within which he should have filed the lawsuit.   In a civil rights case such as this, state tolling provisions apply unless important federal policy will be undermined.  *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975).

      C.    <u>Discussion</u>

     The claims that have survived initial review in this case pertain solely to the prosecution of false disciplinary charges by certain ICI-O officials in late 2005 and early 2006 in an effort to retaliate against Plaintiff for his litigious activities.  These allegations include: Defendant Anderson's pressure on other inmates to implicate Plaintiff in sexual misconduct; the active interference in the disciplinary investigation and hearing process by Defendants Carlin, Kempf,  Martin, and McKenzie; an unfair hearing conducted by Defendant Crawford; and the transfer to IMSI based on the false DOR conviction.  Conversely, the Court has not permitted Plaintiff to go forward with claims against downstream IDOC and IMSI officials, because Plaintiff offered only conclusory statements that these officials were on constructive notice that the DOR had been dismissed and that they "conspired" to hide that fact.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (finding that Fed. R. Civil P. 8(a) "demands more than an unadorned,

**MEMORANDUM DECISION AND ORDER - 8**

the-defendant-unlawfully-harmed-me accusation"); *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) (holding that an allegation of "conspiracy," without more, does not state a claim for relief).

Given the claims that remain, the Court agrees with Defendants that Plaintiff could have discovered the material facts, at the latest, by January 17, 2006. The investigation into the disciplinary charge at ICI-O began in late 2005 and culminated on January 4, 2006, when the hearing was held. Plaintiff was sentenced to 30 days in punitive segregation, with credit for time served, and he completed that sentence on January 17. By then, Plaintiff either knew or reasonably should have known that Defendants prosecuted a "false and bogus DOR" to retaliate against him and to remove him from ICI-O.

All of the facts necessary to reach this conclusion are contained in the Amended Complaint and its attachments. For instance, Plaintiff alleges that "other inmates told" him at the time that Martin had said, "I got Goodrick and that SOB is out of here." (*Id.* at ¶ 42.) Plaintiff also alleges that "Defendant Carlin told Plaintiff that Defendant Martin had ordered [a polygraph] not to be given because 'others' wanted the Plaintiff out of ICI-O so Plaintiff could not continue with his lawsuits, gather evidence, file other litigation and/or encourage inmates to file litigation over treatment and denial of their rights." (*Id.* at ¶ 49.) Plaintiff was

**MEMORANDUM DECISION AND ORDER - 9**

present at the disciplinary hearing and witnessed the alleged improprieties about which he now complains.  (*Id*. at ¶¶ 54-56.)

Plaintiff's assertion that he did not learn that the DOR had been dismissed until nearly three years later does not change the conclusion.  The accrual date for the limitations period does not depend on whether all of the evidentiary proof is in hand, or whether the full extent of the injury is known.  *See, e.g., Wallace*, 549 U.S. at 391.  Instead, what matters is whether sufficient material facts could have been discovered with reasonable diligence to go forward with a cause of action. Regardless whether Plaintiff was aware that the DOR had been dismissed, it is clear that he *was* aware, by early 2006, that the disciplinary process was supposedly based on false evidence and rife with procedural improprieties, which resulted in damage to him.  Absent tolling, then, the limitations period began in January 2006 and expired in January 2008, a year before the Complaint was filed.

When federal courts borrow the state statute of limitations, they also borrow the forum state's tolling rules.  *Hardin v. Straub*, 490 U.S. 536, 539 (1989). Tolling, as opposed to accrual, "stops a limitations period from continuing to run after it has already begun to run."  *Socop-Gonzalez v. Immigration and Naturalization Service*, 272 F.3d 1176, 1183 (9th Cir. 2001) *(en banc)*.  The Idaho Supreme Court has recently declared that "[s]tatutes of limitation in Idaho are not

**MEMORANDUM DECISION AND ORDER - 10**

tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 258 P.3d 310, 312 (Idaho 2007) (internal citation omitted).

Idaho's relevant statute, Idaho Code § 5-219(4), provides for a later starting date for claims based on "the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body," or because of a party's fraudulent concealment of the "fact of damage" when the party stands in a "professional or commercial" relationship to the plaintiff.  Neither of these exceptions applies to this case.

Non-statutory tolling for equitable reasons is unavailable as a general rule in Idaho, and Idaho courts have found only limited exceptions to that rule in criminal post-conviction matters.  *See, e.g., Wilhelm,* 258 P.3d at 312 (Idaho 2007) ("[s]tatutes of limitation in Idaho are not tolled by judicial construction").   The Idaho Supreme Court has recognized, however, the doctrine of "equitable estoppel."  *See Theriault v. A.H. Robins Co.*, 698 P.2d 365, 369 (1985) (citations omitted).  Equitable estoppel does not stop the limitations period from running, but it will prevent a defendant that has concealed the material facts – essentially preventing a plaintiff from filing a timely lawsuit – from raising the limitations bar as a defense.  *Id.*

Equitable estoppel is unavailable to Plaintiff because a necessary element of

**MEMORANDUM DECISION AND ORDER - 11**

the doctrine is that the party asserting estoppel "did not know or could not discover the truth." *Williams v. Blakley*, 757 P.2d 186, 188 (1987).  For the reasons already given, Plaintiff was aware of, or could have discovered, the material facts supporting his claims against the remaining ICI-O Defendants in 2006.

The Court next considers whether application of Idaho's tolling principles is inconsistent with federal law.  *Jones v. Blanas*, 393 F.3d at 927.  In *Hardin v. Straub*, 490 U.S. 536, 539 (1998), the United States Supreme Court admonished that the lower federal courts "should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue."  The Supreme Court identified "§ 1983's chief goals" as "compensation and deterrence," and its "subsidiary goals" as "uniformity and federalism."  *Id*. at 539.

Although Idaho's view that no equitable tolling exists may differ from some other jurisdictions, the following protections remain available.  Idaho statutorily tolls the limitations period for a person's minority status or insanity. Idaho Code § 5-230.  Early filing of a case pending resolution of a previous case will not necessarily result in dismissal in Idaho, but rather a stay or injunction is available to preserve one's rights.  *Wilhelm*, 158 P.3d at 312.  And the theory of equitable estoppel is available in limited circumstances.  *J.R. Simplot Co., v. Chemetics International, Inc*., 887 P.2d 1039, 1041 (Idaho 1994).  With these safety valves in

**MEMORANDUM DECISION AND ORDER - 12**

place, Idaho's tolling principles are not inconsistent with federal law.

Finally, Plaintiff alleges that the injury to him was ongoing, constituting a continuing tort under state law such that the cause of action did not arise until IDOC officials ceased relying on the false DOR to determine Plaintiff's classification.  This is an argument as to when the claim accrued, which is governed by federal law, not state law, because Plaintiff raises only federal claims under 42 U.S.C. § 1983.  Idaho's continuing tort doctrine is therefore not applicable.

In any event, if the continuing tort doctrine did apply, it would not help Plaintiff.  Idaho law defines a continuing tort as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action."  *Cobbley v. City of Challis*, 139 P.2d 959, 963 (Idaho 2002) (internal citations omitted).  In such a case, "the statute of limitations does not begin to run upon the commencement of the tortious conduct but, rather, is tolled until the tortious behavior has ceased."  *Id*.  "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it follows logically that statutes of limitation should not run prior to its cessation."  *Curtis v. Firth*, 850 P.2d 749 (1993).  Here, in contrast, the focus of Plaintiff's allegations against these

**MEMORANDUM DECISION AND ORDER - 13**

Defendants is the harm that occurred to him during the initial corrupt DOR

proceeding, which was completed in 2006.  Each of the Defendants is alleged to

have engaged in specific injurious acts during that process.  Moreover, unlike

continuing tort cases, the false DOR can be identified as the precipitating cause of

harm to Plaintiff.

Accordingly, the Court finds that it is clear from the Amended Complaint

that Plaintiff's claims against the remaining Defendants are untimely.  The Motion

for Judgment on the Pleadings is granted.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED:

1.      Plaintiff's Motion for Summary Judgment (Docket No. 21) is

DENIED as MOOT.

2.      Plaintiff's Motion to Compel (Docket No. 29) is DENIED.

3.      Defendants' Motion for Protective Order (Docket No. 32) is

GRANTED.

4.      Plaintiff's Motion to Strike (Docket No. 34) is DENIED.

5.      Plaintiff's Motion to Strike (Docket No. 36) is DENIED.

6.      Defendants' Motion for Judgment on the Pleadings (Docket No. 19) is

GRANTED.  All claims against Defendants Amy Anderson, Terema

**MEMORANDUM DECISION AND ORDER - 14**

Carlin, Kevin Kempf, Todd Martin, Tom McKenzie, and C/O

Crawford are DISMISSED with prejudice as untimely.

7.     Plaintiff's Motions to Take Judicial Notice and Leave to Supplement

the Record (Docket No. 41; Docket No. 42) are DENIED.

8.     Plaintiff's Motion for Court Order And/Or for an Injunction to

Preserve Evidence in Possession of Defendants (Docket No. 43) is

DENIED as MOOT.

9.     There being no claims or defendants remaining in this case, the cause

of action is DISMISSED.

DATED:  **May 12, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**